## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARNITA PROCTOR,

Plaintiff,

v.

FIRST PREMIER CORP., *et al.*,

Defendants.

Civil Action No. 20-2162 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Plaintiff Charnita Proctor initiated this lawsuit against nine defendant banking and debt-collection institutions on July 9, 2020, alleging that each defendant reported inaccurate and derogatory information related to her credit card account and failed to correct their errors after receiving notice of plaintiff's disputes from the credit reporting agencies, all in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*  *See generally* 1st Am. Compl., ECF No. 35.[1]  Defendant First Premier Corp. ("FPC") responds that these claims are governed by an arbitration agreement and therefore moves to compel arbitration and either dismiss plaintiff's claims or stay the instant lawsuit pending arbitration.  FPC's Mot. Compel Arbitration ("FPC's

---

[1]   This plaintiff has initiated at least one lawsuit per year in this District over the last four years. In 2017, plaintiff filed in Superior Court a lawsuit alleging violations of the FCRA, Maryland Consumer Debt Collection Act, Maryland Consumer Protection Act, as well as negligence, defamation, and breach of contract, against a collection of credit card and insurance companies, which lawsuit was eventually settled.  *See Proctor v. Capital One, N.A. et al.*, No. 17-cv-1966 (CKK).  In 2018, plaintiff brought an FDCPA lawsuit against a debt-collection company in Superior Court that was removed to this Court and subsequently voluntarily dismissed.  *See Proctor v. Portfolio Recovery Associates, LLC*, No. 18-cv-2079 (EGS).  The same year, she also filed an FCRA lawsuit in Superior Court, again removed to this Court, that was eventually dismissed for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b) and Local Civil Rule 83.23.  *See Proctor v. Experian Information Solutions, Inc., et al.*, No. 18-cv-1404 (BAH).  Finally, in 2019, she filed yet another FCRA lawsuit, which was again removed to this Court and eventually voluntarily dismissed.  *See Proctor v. Capital One Auto Finance, Inc et al.*, No. 19-cv-3240 (CKK).

Mot.") at 1, ECF No. 20; FPC's Mem. Supp. Mot. Compel Arbitration ("FPC's Mem.") at 1–2,

ECF No. 20.[2]  Plaintiff objects that she never assented to an arbitration agreement and

---

[2]      This motion is only one of five pending motions, with the remaining motions stemming from plaintiff's difficulty in naming the correct defendants, and all of which may be resolved here.  First, plaintiff originally named Encore Capital Group, Inc. ("ECG") as a defendant, *see* Compl., ECF No. 1-1, and ECG responded with a motion to dismiss on the grounds that the complaint stated no specific facts to support FCRA or FDCPA claims against it, *see* Encore Capital Group, Inc.'s Motion to Dismiss Pursuant to Fed R. Civ. P. 12(B)(6) at 1, ECF No. 24.  Indeed, when plaintiff filed her First Amended Complaint, and proposed Second Amended Complaint, ECG was dropped as a defendant. *See generally* 1st Am. Compl.; Proposed Second Am. Compl., ECF No. 52-1.  An amended complaint "supersedes the [original complaint] and remains in effect throughout the action," such that "the original [complaint] no longer performs any function in the case."  6 Arthur R. Miller *et al.*, Federal Practice and Procedure § 1476 (3d ed. 2020).  "[T]he amended complaint controls which persons are defendants in a lawsuit," *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1328 (11th Cir. 2020), and "parties voluntarily dropped from a[] . . . complaint do not remain in the case," *Palakovic v. Wetzel*, 854 F.3d 209, 221 n.13 (3d Cir. 2017).  By amending the complaint to eliminate ECG as a defendant, therefore, plaintiff in essence seeks to voluntarily dismiss the lawsuit against ECG. *See, e.g.*, *Courser v. Allard*, No. 1:16-CV-1108, 2016 WL 10592322, at *1 (W.D. Mich. Dec. 19, 2016) (treating amended complaint dropping defendant as voluntary dismissal as to that defendant); *Townsend v. Autozone Stores, Inc.*, No. 4:16-cv-04036, 2016 WL 6573983, at *2 (W.D. Ark. Nov. 4, 2016) (same); *Cooper v. City of Westerville*, No. 2:13-cv-427, 2014 WL 617650, at *6 (S.D. Ohio Feb. 18, 2014) (same); *see also Pedrina v. Chun*, 978 F.2d 608, 610 (9th Cir. 1993).  A "plaintiff may dismiss an action without a court order" only "before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A).  Here, because plaintiff did not amend her complaint until after ECG filed its motion to dismiss, dismissal requires a court order, *see* Fed. R. Civ. P. 41(a)(2), and plaintiff's First Amended Complaint will therefore be construed as a request for voluntary dismissal of the case against ECG by court order, pursuant to Federal Rule of Civil Procedure 41(a)(2), *see Townsend*, 2016 WL 6573983, at *2 ("An amendment pursuant to Rule 15 that eliminates (or proposes to eliminate) all causes of action against a particular defendant is the same as a motion to dismiss under Rule 41(a)(2) as to that defendant." (quoting *Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.*, 177 F.R.D. 351, 355 (E.D. Va. 1998))).  Given that ECG also seeks to have the lawsuit against it dismissed, plaintiff's request for voluntary dismissal as to ECG is granted.  Since plaintiff's lawsuit against ECG has been voluntarily dismissed, ECG's motion to dismiss the complaint is denied as moot.

        Second, on October 14, 2020, plaintiff filed a Motion for Order of Default, ECF No. 31, against defendant First Savings Bank ("FSB"), which had not yet answered or otherwise responded to plaintiff's Complaint.  On December 17, 2020, FSB responded, explaining that it was not in the business of issuing credit cards and that plaintiff must have mistakenly named FSB as a defendant in lieu of another bank with the same name, and that, though these facts had been brought to plaintiff's counsel's attention, plaintiff's counsel never responded or withdrew the motion for entry of default.  FSB's Opp'n Pl.'s Mot. Default J. at 1–2, ECF No. 49.  Third, on December 30, 2020, FSB filed a motion to dismiss the First Amended Complaint on the grounds that plaintiff had mistakenly named the wrong defendant. FSB's Mot. Dismiss at 1, ECF No. 51.  Fourth, in response, plaintiff moved to file a Second Amended Complaint, which would remove FSB as defendant and replace it with First Savings Bank d/b/a First Savings Bank Credit Card.  *See* Motion for Leave to Amend the Complaint, ECF No. 52.  Plaintiff failed, however, to confer with defendants, as required by Local Civil Rule 7(m), prompting a direction to plaintiff to conduct the requisite conferral process belatedly and report back to the Court. *See* Minute Order (Jan. 11, 2021).  On January 13, 2021, plaintiff submitted the required supplement to her motion to file a Second Amended Complaint, indicating that no defendant opposed the motion.  *See* Plaintiff's Suppl. Mot. Leave to Amend ¶¶ 1–9, ECF No. 54.  Plaintiff's unopposed motion to file a Second Amended Complaint is granted, and, for the reasons already explained, the Second Amended Complaint will be construed as a request for voluntary dismissal of the case against ECG by court order, pursuant to Federal Rule of Civil Procedure 41(a)(2).  Given that FSB likewise seeks to have the case against it dismissed, plaintiff's request for voluntary dismissal as to FSB is granted.  Since plaintiff's lawsuit against FSB has been voluntarily dismissed, both FSB's motion to dismiss and plaintiff's motion for entry of default against FSB are denied as moot.

specifically argues that FPC has failed to demonstrate that it sent her the credit card agreement containing the putative arbitration provision.  Pl.'s Opp'n FPC's Mot. Compel Arbitration ("Pl.'s Opp'n") at 3–4, ECF No. 46.  For the reasons described below, FPC's motion is denied.

## I.    BACKGROUND

Plaintiff's claims against the defendants are briefly discussed, followed by the factual background to FPC's pending motion to compel arbitration, which facts are largely set out in FPC's supporting declaration by a long-time employee, whose job title and specific position remain a mystery, but whose job responsibilities apparently "include the preparation of affidavits in connection with litigation involving First Premier," *see* FPC's Mot., Attach. A, Decl. of Julie Gibson ("Gibson Decl.") ¶ 3, ECF No. 20-1.

### A.    Plaintiff's Claims Against FPC and Other Defendants

Plaintiff has credit card accounts with defendants FPC, Kohl's, CitiGroup, Credit One Bank, N.A., Merrick Bank, First Savings Bank, First National Bank, TD Bank, and Credit One Bank.  *See* 1st Am. Compl. ¶¶ 12–18.  She alleges that each defendant bank, plus defendant Midland Credit Management, Inc., which does not issue credit cards but owns a portion of plaintiff's credit card debt that she incurred from another credit card issuer, *see id.* ¶¶ 9, 19, reported inaccurate or incomplete information to the credit reporting agency Equifax.  *Id.* ¶¶ 11–19.  As pertinent here, plaintiff claims that, at some unspecified time, FPC incorrectly reported to Equifax that she had paid less than the full balance she owed on her credit card account, even though in fact she had paid the amount owed or more than the amount owed.  *Id.* ¶ 12.  Despite her disputing FPC's reporting to Equifax, plaintiff claims that FPC "did not conduct a reasonable investigation of her dispute and continued reporting the debt inaccurately."  *Id.*  She alleges similar misconduct on the part of each of the other defendants—again at unspecified times— namely that each inaccurately or misleadingly reported her debts to Equifax, by either misstating

her account balance, reporting debts that she was not legally obligated to pay, or failing to report

that she had disputed the amount owed.  *See id.* at ¶¶ 13–19.  In Count One of her Second

Amended Complaint, plaintiff alleges that defendant banks have no standardized procedures to

investigate a disputed debt, and failed to conduct a reasonable investigation into her disputes of

her alleged debts, modify disputed reports, report that plaintiff disputed certain debts, and report

mitigating factors concerning the reported debts, all in violation of 15 U.S.C. § 1581s-2(b).  *Id.*

¶¶ 23–32.  Count Two alleges that defendant debt-collection institution Midland Credit

Management, Inc. reported false information about plaintiff to Equifax and failed to indicate that

reported information was disputed.  *Id.* ¶¶ 38–41.  She seeks compensatory, statutory, and

punitive damages, as well as attorney's fees.  *Id.* ¶¶ 36, 41.

Plaintiff filed the instant lawsuit in D.C. Superior Court on July 9, 2020, and defendants

removed to federal district court on August 7, 2020.  Notice of Removal, ECF No. 1.

### B.    The Arbitration Agreement Between Plaintiff and FPC

FPC contends that plaintiff's lawsuit should be stayed or dismissed and plaintiff should

be ordered to arbitrate her claims because her credit card account is governed by a credit card

agreement containing an arbitration provision covering her FCRA claims.  FPC's Mem. at 2.

The credit card agreement to which FPC says plaintiff is a party includes an arbitration

provision, which provides that "[a]ny Claim arising out of or relating to this Contract, or the

breach of this Contract or your Credit Account, shall be resolved and settled exclusively and

finally by binding arbitration, in accordance with this Provision."  Gibson Decl. Ex. 1, Credit

Card Agreement ("Agreement"), at 1, ECF No. 20-2.  The provision defines "Claim" as "any

claim, dispute or controversy by either you or [FPC], arising out of or relating in any way to this

Contract, this Provision (including claims regarding the applicability, enforceability or validity

of this Provision), your Credit Account, any transaction on your Credit Account and our

relationship." *Id.*   The provision provides the means for its acceptance or rejection, stating that "[t]o exercise your right to opt out [of the arbitration provision] you must provide [FPC] with written notice no later than 30 days after your Credit Account is first opened." *Id.*   "If [FPC] do[es] not receive your written notice within that time frame, your rights to opt out will terminate, and you agree that the provisions of [the arbitration provision] will apply." *Id.*

In support of its argument that plaintiff is bound by this arbitration agreement, FPC submitted the declaration of an FPC employee, who has worked for FPC and its affiliates for approximately 29 years and has "personal knowledge of the general business practices of [FPC] with respect to its credit card accounts." Gibson Decl. ¶ 3.  The declaration states that the information relayed is "true and correct to the best of [Gibson's] knowledge, information and belief" and is "based on [her] personal knowledge or review of First Premier's records" or "upon information provided by persons working under [Gibson's] direction and supervision." *Id.* ¶ 2.

According to the declaration, "[b]ased on [Gibson's] review of the records pertaining to [plaintiff's] Account, . . . after Plaintiff opened the Account, in First Premier's normal course of business and regular business practices, it directed its vendor, First Data Resources . . . to mail via First Class U.S. Mail to the address Plaintiff gave First Premier the applicable credit card for the Account along with the Credit Card Contract and Account Opening Disclosures containing the terms and conditions governing the Account." *Id.* ¶ 6.  Attached to the declaration is "an exemplar Credit Card Agreement containing the terms and conditions governing the Account that would have been sent to Plaintiff at the same time the credit card was sent to her." *Id.*  The declaration explains that "[t]he Credit Card Agreement afforded Plaintiff a thirty-day window to 'reject' the arbitration provision contained in the Credit Card Agreement." *Id.* ¶ 9.  In addition to this procedure for opting out of the arbitration provision, the credit card agreement specifies that

"this Contract is effective upon the earlier of (1) the first Purchase made or Cash Advance taken on your Credit Account, and (2) the expiration of 30 days from the date we issue the Card to you if you do not provide us written notice of your desire to cancel within 30 days," Agreement at 1, without the need for the consumer to sign and return the agreement to FPC.  Notably, no information from the vendor, First Data Resources, tasked by FPC with sending the agreement to plaintiff, is provided.  Instead, the declaration states that "First Premier never received written rejection notices of the arbitration provision in the Credit Card Agreement[] from Plaintiff."  *Id.* ¶ 10.

Additionally, the declaration attaches a record of transactions for which plaintiff used her credit card.  *See* Gibson Decl., Ex. B, Transaction History, ECF No. 20.3.  The transaction history reflects that plaintiff first used the card on June 29, 2011 and continued to use the card through October 23, 2012.  Gibson Decl. ¶ 7; Transaction History at 2–3.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, aims to "counteract judicial hostility to arbitration."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20 & n.6 (1985)).  The Act reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citation omitted), and "strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies," *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 479–80 (1989) (internal quotation marks omitted), aiming to "place arbitration agreements upon the same footing as other contracts," *Southland Corp. v. Keating*,

465 U.S. 1, 10 (1984) (noting that the FAA "declare[s] a national policy favoring arbitration").

Accordingly, "district courts *shall* direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed," *Dean Witter Reynolds*, 470 U.S. at 218 (emphasis in

original) (citing 9 U.S.C. §§ 3–4), and "any doubts concerning the scope of arbitrable issues should

be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

U.S. 1, 24–25 (1983); *see also Pearce v. E.F. Hutton Grp.*, 828 F.2d 826, 829 (D.C. Cir. 1987).

Section 2 of the FAA provides that written agreements to arbitrate disputes arising out of

transactions involving commerce "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party

seeking to enforce an arbitration agreement may petition a district court with jurisdiction "for an

order directing that such arbitration proceed in the manner provided for in such agreement." *Id.*

§ 4. The validity of an unambiguous arbitration agreement is a question of law for the court that

may be resolved by summary disposition under the summary judgment standard of Federal Rule

of Civil Procedure 56(c). *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865

(D.C. Cir. 2008). A motion to compel arbitration is treated as a request for "summary

disposition of the issue of whether or not there had been a meeting of the minds on the agreement

to arbitrate." *Id.* (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, Civil Action No.

15-151 (GK), 2006 WL 1793295, at *1 (D.D.C. June 28, 2006)). "[S]ummary judgment is

appropriate only if 'there is no genuine issue as to any material fact and the moving party is

entitled to a judgment as a matter of law.'" *Id.* (alteration omitted) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

Under this standard, "the party resisting arbitration bears the burden of proving that the

claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S.

79, 91 (2000); *see also Gilmer*, 500 U.S. at 26.  Accordingly, "[t]he party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract."  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). As with summary judgment proceedings, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255; *see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) ("The district court, when considering a motion to compel arbitration . . . , should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.").

In resolving a motion to compel arbitration, the focus is on the arbitrability of the dispute rather than the dispute itself, *Aliron Int'l*, 531 F.3d at 865, and thus "a court may not weigh the merits of a grievance when determining whether to compel arbitration," *Trans World Airlines, Inc. v. Air Line Pilots Ass'n*, 172 F.3d 921, 1998 WL 720712, at *1 (D.C. Cir. 1998) (Table); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (concluding that when parties have agreed to arbitrate, courts have "no business weighing the merits of the grievance" (quoting *AT&T Techs., Inc. v. Commc'ns Workers,* 475 U.S. 643, 649–50 (1986))). The inquiry is instead limited to whether the parties have agreed to arbitrate the matters at issue. *See Aliron Int'l*, 531 F.3d at 865.

## III.   DISCUSSION

 "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."  *Henry Schein, Inc.*, 139 S. Ct. at 529 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  Thus, the Supreme Court has directed that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

626 (1985); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." (emphasis omitted)); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). "When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Aliron Int'l*, 531 F.3d at 865 (alterations omitted) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009).

FPC seeks to compel arbitration of the plaintiff's claims based on the Arbitration Agreement supposedly entered into by plaintiff and FPC. *See* FPC's Mem. at 1. Plaintiff does not suggest that her claims would fall outside the scope of the broad arbitration provision, but rather disputes that a contract exists at all between her and FPC. Specifically, she contests that she ever received the credit card agreement and posits that, consequently, she could not have assented to it and is not bound by its arbitration provision. *See* Pl.'s Opp'n at 3–5. Whether a contract exists between plaintiff and FPC, and whether plaintiff must therefore arbitrate her claims against FPC, depends on the sufficiency of the Gibson Declaration, which, along with its attached exhibits, is the only evidence FPC has submitted that plaintiff received the contract and agreed to its terms. The law that governs the formation of a contract between plaintiff and FPC is discussed first, followed by discussion of the sufficiency of the Gibson Declaration to prove that plaintiff received the credit card agreement and assented to its terms.

### A.   Choice of Law

At the outset, the parties disagree over which jurisdiction's law governs the question of the formation of a contract between plaintiff and FPC, with the latter arguing that South Dakota

law applies, both because this defendant is incorporated and has its principal place of business in South Dakota and because the credit card agreement specifies that its interpretation is governed by South Dakota law. *See* FPC's Mem. at 4–5; Agreement at 1. Under South Dakota law, "[t]he use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card." S.D. Codified Laws § 54-11-9. This means that, if plaintiff received the credit card agreement, her use of her credit card would constitute acceptance of the agreement under South Dakota law.

Plaintiff merely assumes, without argument, that District of Columbia law applies. *See* Pl.'s Opp'n at 3. Under District of Columbia law, "an offeror is entitled to prescribe an exclusive method of acceptance," *Vaulx v. Cumis Ins. Soc'y, Inc.*, 407 A.2d 262, 264 (D.C. 1979); *see also Malone v. Saxony Coop. Apartments, Inc.*, 763 A.2d 725, 729 (D.C. 2000), including with specified conduct, *see, e.g., Malone*, 763 A.2d at 729 (holding that purchaser's tender of earnest money constituted assent to contract terms), such as plaintiff's use of her credit card or her failure to specifically reject terms, *see* Agreement at 1 (providing that credit card user assents to credit card agreement unless she provides, within 30 days, written notice of cancellation of account); *id.* (providing that credit card user agrees to the arbitration provision of the credit card agreement unless she provides, within 30 days, written notice of rejection).

Whether South Dakota or District of Columbia law applies need not be resolved, because the result is the same: if plaintiff received the credit card agreement, then her subsequent use of the card would constitute acceptance of the agreement's terms, including its arbitration provision, and she must arbitrate her claims. *See Samenow v. Citicorp Credit Servs., Inc.*, 253 F.

Supp. 3d 197, 203–04 (D.D.C. 2017) (noting that use of credit card can constitute assent to accompanying contract under both South Dakota and District of Columbia law).  In other words, regardless of which law applies, whether plaintiff must arbitrate her claims against FPC turns on whether she received the credit card agreement, which in turn depends on the sufficiency of the Gibson declaration for that purpose.  That issue is addressed next.

### B.      The Gibson Declaration

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  Rule 56(c)'s "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented," *Harris v. Gonzales*, 488 F.3d 442, 446 (D.C. Cir. 2007) (quoting *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981)), and "[a]n affidavit based merely on information and belief is unacceptable," *Londrigan*, 670 F.2d at 1174; *see also Harris*, 488 F.3d at 446 ("[W]e have expressly held that affidavits based upon belief are inadequate to support a motion for summary judgment.").

Plaintiff argues that FPC is not entitled to summary judgment on the question of contract formation, because the only evidence presented that plaintiff ever received the credit card agreement is not admissible under Federal Rule of Civil Procedure 56.  *See* Pl.'s Opp'n at 6. Although framed as an objection to the Gibson Declaration's admissibility, *see id.*, in substance plaintiff argues that the declaration is not sufficient to prove that she was mailed the credit card agreement.  The declaration is admissible because it is based on personal knowledge, including Gibson's review of FPC's business records, *see* Gibson Decl. ¶ 2, and the fact that it states it is based on the "best of [Gibson's] knowledge, information, and belief," *id.*, rather than solely on personal knowledge, does not render it inadmissible.  Care is required, however, to determine

11

what portions of the Gibson Declaration are based on personal knowledge and so may be properly considered and what portions, if any, are not so based and must therefore be disregarded.  *See Harris*, 488 F.3d at 446 (holding insufficient an affidavit that states it is based upon "the best of [affiant's] knowledge and belief" when affidavit's statements do not clearly demonstrate that affiant has personal knowledge); *Elzeneiny v. Dist. of Columbia*, 125 F. Supp. 3d 18, 30 (D.D.C. 2015) ("tread[ing] carefully in relying on" declarations because they "state that they are made on 'knowledge, information and belief'" rather than solely on personal knowledge, and "accept[ing] only those statements in the declarations that clearly indicate personal knowledge . . . or are supported by adequate documentation" (citation omitted)).

The fact that the Gibson Declaration is generally admissible, however, does not mean it provides sufficient evidence, based on the declarant's personal knowledge, to establish that the credit card agreement was mailed to plaintiff.  The declaration states, on the basis of the declarant's review of FPC's business records, that FPC "directed its vendor, First Data Resources . . . , to mail via First Class U.S. Mail to the address Plaintiff gave First Premier the applicable credit card for the Account along with the Credit Card Contract."  Gibson Decl. ¶ 6. In other words, the declarant has personal knowledge only that FPC directed its third-party vendor to mail the credit card and credit card agreement to plaintiff, but not that the credit card agreement was actually mailed.  *See Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1331 (11th Cir. 2016) (declining to order plaintiff to arbitrate claims because defendant's declarant "ha[d] no personal knowledge that a Welcome Kit [including putative arbitration agreement] in fact was sent to" plaintiff); *Webster v. ACB Receivables Mgmt.*, 15 F. Supp. 3d 619, 631–32 (D. Md. 2014) (disregarding declaration stating that third-party vendor forwarded

letter because it did "not establish the requisite personal knowledge of the mailing," absent an affidavit from the vendor itself or an "electronic record to support that the letter was ever sent").

To establish that FPC's vendor mailed plaintiff the credit card agreement, FPC need not have provided a declaration from the person that actually put the agreement in the mail. *See, e.g.*, *Kernaghan v. Forster & Garbus, LLP*, No. 18-CV-0204 (SJF)(AKT), 2019 WL 981640, at *4 (E.D.N.Y. Feb. 25, 2019) (rejecting argument that declaration could not establish that credit card agreement had been mailed unless declarant mailed agreement himself and noting that "[t]here is no requirement that the affiant either personally perform or oversee the mailing"). For instance, FPC could have provided a statement based on sufficient personal knowledge concerning its vendor's ordinary business practices in carrying out directions from FPC in mailing credit card materials, *see, e.g.*, *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 918 (N.D. Tex. 2000) ("Proof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business." (citing *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983))); *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859 (S.D.N.Y. 1995) ("[A] party must first produce evidence of mailing, either by offering the testimony of the person who actually mailed the letter or through indirect evidence such as proof that the mail was sent through office procedures followed in the regular course of business."); *Beattie v. Credit One Bank*, No. 5:15-CV-1315 (LEK/TWD), 2016 WL 4203511, at *3 (N.D.N.Y. Aug. 9, 2016) ("Sworn affidavits of corporate officers are sufficient proof of mailing because customary mailing practices, even if proven by circumstantial evidence, can serve to demonstrate that the agreement was actually mailed."), or a business record demonstrating that the credit card agreement had been mailed, *see, e.g.*, *Kernaghan*, 2019 WL 981640, at *3 (holding that declaration describing defendant's "general mailing procedures,"

including mailing credit card and credit card agreement together to cardholder, and stating that defendant created contemporaneous record documenting mailing, was sufficient to establish mailing).

Here, given that the Gibson Declaration includes a statement, with a supporting business record, that plaintiff used the card, establishing that she must have received it, a statement based on personal knowledge that FPC's vendor's business practice is to mail a credit card agreement in the same mailing as the credit card would have established that plaintiff was sent the agreement. *Cf. Saroza v. Client Servs., Inc.*, Civil Action No. 17-3429, 2019 WL 5677968, at *3 (D.N.J. Aug. 22, 2019) (holding that declaration "mak[ing] clear that it is [credit card issuer's] regular practice to mail credit cards and card agreements to customers in the same mailing, and that [credit card issuer] did so here," was sufficient to establish mailing); *Turfgrass Grp. v. Ga. Cold Storage Co.*, 816 S.E.2d 716, 722 n.5 (Ga. Ct. App. 2018) (noting that affidavit "showing a standard practice of mailing a credit card agreement *and* a newly issued credit card in a *single* envelope" was sufficient to prove mailing (emphasis in original)). No such statement is provided here and, absent such evidence, a key link is missing from the logical chain that would permit the inference that plaintiff was mailed the credit card agreement. *See Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820, at *4 (S.D.N.Y. Dec. 2, 2016) (holding that "[d]efendants have no evidence that the [credit card] Agreement was sent to Plaintiff" because declarant "does not purport to have first-hand knowledge of whether the . . . Agreement was sent to Plaintiff and does not describe a standard office mailing procedure").

Underscoring this point is the fact that the declaration provides only "an exemplar Credit Card Agreement containing the terms and conditions governing the Account that would have

14

been sent to Plaintiff at the same time the credit card was sent to her."  Gibson Decl. ¶ 6.  This statement that the credit card agreement "would have" been sent to plaintiff when she received her credit card highlights that this declaration contains no information based on sufficient personal knowledge that an agreement was in fact mailed to plaintiff.  *Cf. Bazemore*, 827 F.3d at 1328 (11th Cir. 2016) (holding insufficient declaration that exemplar credit card agreement "would have been sent" to plaintiff because it "never stated that . . . a Cardholder Agreement actually *was* sent to" plaintiff (emphasis in original) (internal quotation marks omitted)).

FPC's suggestion that plaintiff's use of the credit card mailed to her "evidences [that] she received the Credit Card Agreement," Gibson Decl. ¶ 7; *see also* FPC's Reply Supp. Mot. Compel at 5, ECF No. 48 ("[T]he Gibson Declaration . . . proves that Plaintiff received the envelope containing both the plastic credit card and the Credit Card Agreement because Plaintiff *used the card*." (emphasis in original)), does not fill the gap in evidence. As explained, the Gibson Declaration reflects at most personal knowledge that FPC's third-party vendor was directed to mail to plaintiff the credit card and accompanying credit card agreement.  To be sure, that plaintiff used the card proved that she received the card, and thus that the third-party vendor followed FPC's instructions to mail her the card.  Plaintiff's use of the card does not prove, however, that the vendor also followed FPC's instructions to mail her the credit card agreement, as it could have mailed her the card without including the agreement.

Thus, considering the Gibson Declaration to the extent that it reflects personal knowledge and affording plaintiff reasonable inferences, FPC has failed to establish that plaintiff ever received the credit card agreement, and therefore could have assented to its terms.  Absent a declaration establishing that the credit card agreement was in fact mailed to plaintiff, in

compliance with the requirements of Rule 56(c), FPC has failed to show that there was an agreement to arbitrate plaintiff's claims, and its motion to compel must therefore be denied.

## IV.    CONCLUSION

For the foregoing reasons, defendant FPC's motion to compel is denied.  An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: January 13, 2021

_____
BERYL A. HOWELL
Chief Judge